## WOODSIDES v. THE STATE, 2 Howard, 655.

### MURDER.

Where the caption of the indictment was: "The State of Mississippi, Wilkinson county, ss.  The circuit court of Wilkinson county, October Term, 1835, thereof, in the year of our Lord, 1835.  The grand jurors of the State of Mississippi, empanelled and sworn, in and for the county of Wilkinson and the State of Mississippi, at the term aforesaid, in the name and by the authority of the State of Mississippi, upon," &c., it was held a sufficient allegation that the grand jurors were of the State of Mississippi, and of the county of Wilkinson; and also that they were *then* and *there* sworn.[1]  If the record show that A. B. *was sworn as foreman*, it is sufficient evidence that he was *appointed* foreman.

The circuit courts, as courts of oyer and terminer, have power to issue writs tested and returnable within the same term; and it is no objection to a *venire facias*, that it commands the sheriff to summon a jury *from the county*, instead *of the county;* the word "from" not authorizing him to summons persons out of his county.

The *venire facias* in capital cases, is not a writ within the contemplation of the 20th section of the circuit court law, and is not required to bear test on the first day of the term next preceding that to which the same may be made returnable.  The authority to issue this writ and to fix the day on which it shall be returned, vested in the circuit courts, not by virtue of the above statute, but as incident to their powers as courts of oyer and terminer at common law.  The act of 1833, prescribing the mode of summoning and empanelling juries in capital cases, was simply declaratory of the powers which those courts before possessed; and did not in any respect, modify their authority as it then existed.

Challenge to the array is an irregular form of pleading, whereby the party excepts to all the jurors returned upon the *venire*, for some original defect in making the return thereto; and must relate to the acts of the sheriff, and should charge a particular default or partiality in forming the array.  Consequently, the want of legal qualification in a juror, placed upon the panel, is no ground of challenge to the array.

Where it is stated in the indictment that the wounds of which the deceased died, were inflicted on the 8th day of September, 1835; and "that from said day he, the said H. P. S., until the 13th day of September, 1835, in the county of W., did languish, and languishing did live, on which said 13th day of September, 1835, &c., *he died;* and the said Alexander Woodsides, *then and there*, &c., was present, aiding and abetting the said Samuel Woodsides, and Robert Woodsides, in the felony and murder aforesaid, in manner and form aforesaid," Held, that these allegations in the indictment are sufficiently certain, and form no ground for reversing the judgment.

A party, in order to present the question of error in the decision of the court upon the competency and relevancy of evidence, offered on the trial of a cause, or of any matter of fact brought to the consideration of the court, not appearing by the pleadings, should except to the opinion and embody the evidence or facts in the bill of exceptions.  If this be not done, the judgment of the court below upon the subject, will be regarded as correct.

The *venire facias* directed the sheriff to summon fifty jurors, but the panel contained the names of fifty-one.  The sheriff returned that he had served the prisoner with a true copy of the indictment and a list of the jurors; but the name of one had been erased from the panel, leaving the fifty, still.  The affidavit of the prisoner, affirming the identity of the list, and denying that a true one had been delivered to him, cannot be received by the court as conclusive that he had not been regularly notified of the jurors who were to pass upon his trial.  If the sheriff has returned that he has delivered to the prisoner a correct copy of the indictment, and a list of the jury, the truth of such return cannot be collaterally questioned.

[1] State v. Price, 6 Halst., 203.

It is a common law doctrine that the declarations of deceased persons, made after the reception of the mortal wound, and under the declared apprehension of death, are admissible as evidence on the trial of the accused; and the 10th section of the bill of rights, declaring " that in all criminal prosecutions the accused hath a right to be heard by himself and counsel, to demand the nature and cause of the accusation, and to be confronted by the witnesses against him," &c., is but an affirmance of this long cherished principle of the common law.

Presumption of a malicious intent, may arise from the character of the weapon used in the perpetration of the deed.

W. was convicted of murder in the circuit court, but owing to some cause not appearing of record, sentence was not executed. At a subsequent term of the court, certain proceedings were had in the case. Held, that errors in the subsequent proceedings cannot affect the validity of the judgment previously entered against the prisoner.

Error to Wilkinson circuit court. WILLIS, J.

The opinion of the court contains a sufficient statement of the facts of the case.

*John Gildart,* for plaintiff in error.

Cited Rev. Code, 134; 1 Chitty, 270; 4 Hawkins; Peck's R 310; Rev. Code, 116; 1 Chitty, 419; Jury Law, Acts Legislature 1830; 1 Coke, 156, A; Leach 87; Chitty, 165.

*J. F. Collins,* attorney general.

SMITH, J.

At the October term, 1835, of the circuit court of Wilkinson county, Samuel Woodsides, the prisoner at the bar, was tried and convicted of the murder of Hudson P. Liscomb, and having received sentence, he has, by writ of error, removed his cause into this court, and asks a reversal of the judgment against him, for several errors and irregularities alleged to exist in the proceedings of the court below.

As the questions which are presented by the record, and which it will be necessary to determine, are disconnected and independent, we will pursue the order in which they stand in the assignment of errors. It is insisted in the first place, that there is error in the record, because it is not shown that the court in which the prisoner was tried was holden within the state of Mississippi, nor where the jury were empanelled, nor the indictment found. These objections are valid, and, if they exist in point of fact, would require a reversal of the judgment.

But the record shows conclusively that they are without foundation. The caption of the indictment sets out with certainty each of these particulars. It is in the following words, to wit: "The State of Mississippi, Wilkinson county, ss. The circuit court of Wilkinson county, October term, thereof, in the year of our Lord one thousand eight hundred and thirty-five. The grand jurors of the State of Mississippi, empanelled and sworn, in and for the county of Wilkinson, and State of Mississippi, at the term aforesaid, in the name and by the authority of the State of Mississippi, upon, &c." It is contended in the second place, that there is error, because it does not appear in the record, that a foreman of the grand jury was appointed by the court.

Assuming that it is necessary that the appointment of the foreman should appear upon the record, in order to confer validity upon the finding of a grand jury, we are of opinion that such appointment appears with the requisite degree of certainty. It is true, that it is not expressly stated that a foreman was appointed by the court. The record shows that fifteen persons were drawn, according to the statute, from the jurors summoned for the first week of court and sworn and empanelled as a grand jury for the body of the county, of which Daniel Bass was sworn as foreman. This statement on the record, that Bass was sworn as foreman of the grand jury, necessarily implies his appointment as such by the court. And it is sufficient if that which is omitted be implied in common understanding from that which is expressed. 3 Bac. Abr. 574. But we understand that the administration of the oath required by the statute to be taken by the foreman of the grand jury, is in effect the appointment, and, in fact, the only appointment ever made by a court of the foreman of a grand jury.

The third objection is, that it does not appear that the grand jury were then and there sworn. This objection is answered by what is above remarked. It is also clear from authority that the words "then and there" need not appear in the caption, for if it is by the record shown that the jurors were sworn, it will be sufficiently intended that they were "then and there" sworn. Chitty Cr. Law, 334 ; 3 Bac. Abr. 574. The fourth and fifth exceptions may be considered under the same head, and present

the question of error in the decision of the court overruling the motion to quash the special *venire.*

Several grounds were assumed in support of the motion to quash the *venire,* to wit:

1. That by the precept of the writ of *venire facias,* the sheriff was not required to summon good and lawful men "*of*" his county.

2. That the writ shows a prosecution pending between the State of Mississippi and Robert Woodsides, Alexander Woodsides and Samuel Woodsides, and the jury were required to determine only, whether the said Samuel be guilty of the crime whereof he stands charged.

3. That the writ does not bear test at the term next preceding that to which the same is made returnable.

4. That the return upon the said writ does not show at what time the jurors mentioned therein were summoned.

5. That the writ does not show upon whom the murder was committed, of which the prisoner stands charged.

In relation to the first ground, it was contended in the argument at bar, that the writ varies from the proper form and necessarily violates the rights of the accused. The particular variance insisted on, is, that by the writ, the sheriff was required to summon the jury "from the county," and not "of the county." It is unquestionably the intention of the law that the accused shall be secure in his right of an impartial trial by a jury of his county; and if it could be shown that a precept to the sheriff, directing him to summon "fifty good and lawful men from his county" would authorize him or require him to summon individuals as jurors who were not of his county, the exception would be held valid. But as the writ is not varied according to common undertstanding or in its legal import by the insertion of the word "from," instead of the word "of," we cannot see that the objection has any validity whatever.

The second, fourth and fifth grounds of objection to the *venire* were not urged in argument, and as they do not constitute a defect in the *venire* which should induce this court to reverse the judgment of the circuit court, will not be particularly examined.

The objection that the writ which was issued to bring in the jury for the trial of the prisoner was not tested at the next term preceding that at which it was made returnable, is equally without foundation.    It is clearly not a writ contemplated by the 20th section of the circuit court law, Revised Code 106, by which it is directed generally, that all writs or process shall bear test on the first day of the term next preceding that to which the same may be made returnable; and that all original process, and all subsequent process thereupon, to bring any person or persons to answer any action, suit, bill, or complaint in any state, shall be made returnable on the first day of the term next succeeding that at which the same shall bear test, and shall be executed at least five days before the return day thereof; and that any writ or process, except as above described, which shall be issued within five days before the commencement of any term of a court, shall be made returnable to the next term after that to be held within five days.

The special *venire* in the case under consideration, issued after the arraignment of the prisoner, and in term time, and if it be governed by the general provisions of any law regulating the test and return of process from the circuit courts, it should have been made returnable on the first day of the preceding term, and not, as it was, on a day within the term at which it issued.

The authority to issue this writ and to designate the time at which it is to be returned, vested in the circuit courts, as incident to their power as courts of oyer and terminer at common law.

The act of 1833, prescribing the mode of summoning and empanelling in capital cases, was but declaratory of the powers which those courts before possessed, and imposed no restriction, nor in any respect modified their authority as it then existed. But as the writ emanated during term time, it was properly tested at the commencement of the term.    For, if it be held that the testing of the special *venire* is to be regulated by the general law in regard to process, it should have been tested at the same time at which it ought to have been, if made returnable at the preceding term of the court.

YALE LAW LIBRARY

And there can be no doubt, under the law of the Revised Code, that process emanating during term time, and made returnable on the first day of the preceding term, should be tested on the first day of the term at which it shall issue.

The next exception is taking to the ruling of the court below upon the demurrer to the prisoner's challenge to the array.

A challenge to the array is an irregular form of pleading, by which the party excepts to all the jurors returned upon the *venire*, for some original defect in making the return thereto. 1 Chitty Cr. Law, 537.

It must relate, therefore, to the acts of the sheriff or some other officer, and should charge him with a particular default or partiality in arraying the panel. Coke Litt., 156 A.

The array of the panel is the placing in order the names of the jurors who are returned for the trial of the issue. Coke Litt., 156, A.

The want of qualification in a juror placed upon the panel, or arrayed, is consequently no ground of challenge to the panel. This is conclusively shown from the fact, that the coroner may return the same jurors immediately after the array has been quashed for partiality or default on the part of the sheriff in making his returns, or in arraying them.

Anciently it was held good cause of challenge to the array, that a sufficient number of hundredors were not returned on the panel; but the want of qualification which constitutes an objection to the polls, was never considered a cause of challenge to the principal panel. The causes assigned for the challenge in the case under consideration, are not predicated upon any default or act of partiality in the officer who returned the *venire*. The court was, therefore, correct in sustaining the demurrer to the challenge.

The next objection is to the decision of the court overruling the motion in arrest of judgment. Several of the reasons assigned in support of the motion have been commented upon in the consideration which we have seen to the third assignment of error, and will in this place require no further elucidation.

The indictment is alleged to be repugnant and inconsistent. And in support of this position, it is said that the "time and

place, as set forth, of the aiding and abetting on the part of the accessory is long subsequent to the time laid when the principal committed the act."

It is stated in the indictment, that the wounds of which Hudson P. Liscomb, the murdered individual, died, were inflicted on the 8th of September, 1835 ; and "that from said day he, the said Hudson P. Liscomb, until the 13th day of September, 1835, in said Wilkinson county, did languish, and languishing did live, on which said 13th day of September, 1835, &c., *he died ;* and the said Alexander Woodsides, *then and there,* &c., was present, aiding, &c., the said Samuel Woodsides and Robert Woodsides, in the felony and murder aforesaid, in the manner and form aforesaid."

In Catherine Graham's case (Leach, Crown Law, 87), which was referred to by counsel, the indictment contained two counts, charging two distinct felonies against the principals; and in the same indictment, Catherine Graham was charged as accessory after the fact, at common law, for harboring the principal felons, she well knowing that they had committed the felony aforesaid. Catherine Graham was convicted, and the judgment arrested ; the court holding that it was uncertain to which of the felonies the charge referred.

In the case before us, there is but one offense with which the prisoner stood charged ; and the allegations of the indictment in respect to that offense are clear, distinct, and unequivocal ; and upon the principle of the decision referred to, although there might be uncertainty with respect to the time in the charge against Alexander Woodsides, it would afford no ground for arresting the judgment against the prisoner at the bar.

But it does not appear to us that this part of the indictment is obnoxious to the objection of uncertainty.

The indictment alleges, that the said Alexander Woodsides, *then and there,* etc., was present, aiding, etc., the said Samuel Woodsides, and Robert Woodsides, in the felony and murder aforesaid, in the manner and form aforesaid, to do, and commit, etc. The latter part of the count explains the time to which reference is made by the words "then and there." The deed which terminated in the death of Liscomb, was perpetrated on

the 8th of September, but he did not expire till the 13th of the same month.

The circumstances attending the murder, "the manner and form," are stated; and it being alleged that the accessory was "then and there" present, aiding and assisting "in the manner and form aforesaid," in the commission of the murder, there is no room for uncertainty as to which of the antecedents reference is made.

The next error assigned, is to the judgment of the court overruling the motion for a new trial. But there is nothing on the record by which we can examine into the correctness of that decision. The testimony adduced on the trial, does not appear in it, nor do any of the grounds upon which the decision was predicated. The facts detailed in the affidavit of the prisoner, if they constituted a sufficient showing to have required the judge to award a new trial, cannot be noticed by this court.

The party, in order to present the question of error in the decision of a court upon the competency and relevancy of evidence offered on the trial of a cause, or of any matter of fact brought to the consideration of the court, not appearing by the pleading, should except to the opinion and embody the evidence or facts in the bill of exceptions. This not having been done in the present case, we are bound to regard the judgment of the court upon the motion as correct.

The prisoner, when put upon trial, objected to being tried by the jury empanelled, upon the alleged ground that he had not been served with a correct list of jurors returned by the sheriff. The court overruled the objection; to which decision of the court, the prisoner by his counsel excepted, and filed his bill of exceptions in the following words, to wit: "Be it remembered, that on the trial of this cause, and during the progress thereof, Robert Semple was called as a juror, whose name appeared upon the panel; it also appeared upon the copy furnished the prisoner, that the name of Robert Semple was erased, and that without his name, there were fifty jurors named. In the original, there were only fifty jurors named. The prisoner, by his counsel, objected on the ground that a correct copy of the list of jurors who were to pass upon his trial, had not been furnished him."

The fact that the prisoner was not furnished with a correct list of the jury who were to try him, is not directly stated in this bill of exceptions.

The facts presented by the court, and upon which it is to be presumed its decision was based, is that the name of Robert Semple, who was one of the panel, appeared erased from the list which had been furnished to the prisoner, and that without his name, the copy or list contained the names of fifty jurors, the number which, by the award of the court, should have been summoned. But it is not stated, nor can it be inferred from the bill of exceptions, that the list, at the time it was presented to the prisoner, did not contain the name of Semple, or that without his name more than fifty were included.

But assuming that the bill of exceptions stated directly that the list referred to was the one which had been delivered to the prisoner, and that it was incorrect in not containing the names of all the jurors who had been summoned upon the special venire, would the list itself, supported by the affidavit of the prisoner, affirming the identity of the list and denying that a true one had been delivered to him, have constituted evidence which the court should have regarded as conclusive of the fact that the prisoner was not notified, as the law requires, of the jurors who were to pass upon the trial?

The rule of evidence does not require the strongest possible evidence of the matter in contest, but only that evidence shall not be admitted, which from its character supposes a higher degree of evidence to exist. It is the duty of the sheriff as the ministerial officer of the court, upon making his return to the venire in any case where the party has been indicted for a capital offense, to deliver to the prisoner a copy of the indictment and a list of the jury, and to make a return thereof to the court.

If the sheriff, failing to deliver to the prisoner a list and copy as required, or having done so, neglect to make a return, it would be proper to inquire into the matter upon affidavit, or otherwise upon suggestion to the court that such was the fact. 3 Johns. R., 529 ; 1 Munf. R., 269. But if the sheriff has returned that he has delivered to the prisoner a correct copy of the indictment, and a list of the jury, the truth of such return, we

apprehend, could not be collaterally questioned. The return of the sheriff that he has served the prisoner with a list of the jury, must be conclusive of the fact, as his return to any process issuing from the court and properly directed to him. In the case of Stayton v. The Inhabitants of Chester, 4 Mass. Rep., 479, it was held to be "clear that when a writ appears by the return, indorsed by the officer, to have been legally served, the defendant cannot plead in abatement of the writ by alleging matter repugnant to the return." And when a writ is duly returned and filed, the return is so far evidence of the facts stated in it, as not to be disputed incidentally; and hence, if the sheriff return a rescue or a summons on a writ of *scire facias*, the parties cannot dispute it on affidavit. Norris' Peake, 82; Phillips v. Hyde, 1 Dallas, 439.

In the case under consideration, the officer's return, which appears of record, shows that the prisoner was furnished with a list of the jurors. Upon the principle, therefore, that the return of the sheriff cannot be questioned by alleging matter repugnant to it, the decision of the court overruling the objection of the prisoner must be regarded as correct.

An objection to the judgment of the court overruling the motion for a new trial, although it is not properly presented by the record, will be noticed. It is in effect, this, that the declaration *in extremis* of the murdered person, as to the fact of murder, should not be admitted as evidence against the accused.

It is not denied, that by the common law, the declarations of deceased individuals, in prosecutions for murder, made after the reception of the mortal wound, and under the declared apprehension of death, are admissible as evidence.

But the objection is rested upon the assumption that this principle of the common law has been abrogated by the 10th section of the bill of rights, which declares "that in all criminal prosecutions, the accused hath a right to be heard by himself and counsel, to demand the nature and cause of the accusation, to be confronted by the witness against him," etc.

This point was ably and ingeniously argued by the counsel for the accused, but we cannot assent to the proposition sought to be established. The bill of rights in respect to the rights of

the accused, of being confronted by the witnesses for the prosecution, is but an affirmation of a long cherished principle of the common law. By the bill of rights the accused is secured in the right of an oral examination of the opposing witnesses, and of the advantages of a cross-examination. This privilege is placed beyond legislative action. The same right belongs to the subjects of England, but there they have no constitutional provision guarantying its perpetuity.

The argument proceeded upon the supposition that the deceased party was the witness, and as he could not be confronted or cross-examined by the prisoner, it was a violation of the prisoner's rights by the sovereign will of the state to allow the dying declarations of the deceased to be given in evidence.

But it is upon the ground alone that the murdered individual is not a witness, that his declarations, made *in extremis,* can be offered as evidence upon the trial of the accused. If he were, or could be a witness, his declaration, upon the clearest principle, would be inadmissible. His declarations are regarded as facts or circumstances connected with the murder, which, when they are established by oral testimony, the law has declared to be evidence. It is the individual who swears to the statements of the deceased that is the witness, not the deceased.

In the case of implied malice, the presumption of a malicious intent may arise from the weapon used in the perpetration of the deed. Thus if A, without any provocation or declaration of preconceived hatred, deliberately draw his sword and inflict a mortal wound upon B, it will be murder, and the fact that a weapon calculated to produce death was employed in the assault, will be the circumstance from which the law presumes the existence of malice. Evidence applied to proceedings in courts of justice consists of those facts or circumstances connected with the legal proposition which establishes its truth or falsehood. The use of the weapon in the case supposed, is the fact or circumstance which establishes or manifests the criminal intention.

In a case where the declarations of the deceased are offered to the jury, they constitute facts or circumstances to which the law imparts verity, and tend to establish the truth of the matter to which they relate. The position, therefore, that the declarations

of the deceased, in prosecutions for murder, are not admissible as evidence to establish the murder, is wholly without foundation.

The sentence of death which was pronounced upon the prisoner at the October term of the circuit court of Wilkinson county, from some cause not appearing of record, was not carried into execution at the time appointed. He was therefore ordered before the same court at its March term, in 1836, to have execution awarded on the judgment previously pronounced, at which time certain proceedings took place which it is not now important to notice, for if, in those proceedings, errors had intervened, it cannot affect the validity of the judgment which had previously been entered against the prisoner.

Having carefully examined every question presented by the record, and having come to the decided conclusion that there is no error which can authorize this court to reverse the judgment of the court below, we have affirmed it.